UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                   :

In re GRAND THEFT AUTO VIDEO     :
GAME CONSUMER LITIGATION     :
(No. II)                                :     No. 1:06-md-1739 (SWK)
                                   :     (MHD)
                                   :

-------------------------------------------------------:
                                   :

This Document relates to:         :
           All Actions          :     Date:  June 25, 2008
                                   :     Time:  10:30 a.m.
-------------------------------------------------------x     Dept:  Hon. Shirley Wohl Kram

OBJECTION AND NOTICE OF INTENTION TO APPEAR
AT FAIRNESS HEARING ON PROPOSED SETTLEMENT
<u>AND AWARD OF ATTORNEYS' FEES AND EXPENSES</u>

Lawrence W. Schonbrun, Esq.
Law Office of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA 94705
Tel:  (510) 547-8070
Fax: (510) 923-0627

Attorney for Plaintiff Class Member/
Objector Theodore H. Frank

TO:   THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL
      PLAINTIFFS AND DEFENDANTS AND THEIR RESPECTIVE
      ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that pursuant to the Notice of Proposed Class

Action Settlement ("Notice") authorized by this Court, Plaintiff Class

Member/Objector Theodore H. Frank ("Class Member" or "Objector"), who is a

member of the above-denominated plaintiff class (see Exhibit A), files the

following written objection regarding the proposed settlement and attorneys' fees

and reimbursement of expense request.  This Class Member intends to appear

through counsel and orally object at the above-scheduled fairness hearing and

anticipates that, with the Court's permission, his presentation will not exceed 30

minutes.

OBJECTIONS

      Plaintiff Class Member/Objector objects as follows:

      1.     Class Member objects to Class Counsel's request for attorneys' fees.

Class Counsel have violated class members' Rule 23(h) right to notice.

>      (1)     *Motion for Award of Attorney Fees.*  A claim for an
>      award of attorney fees and nontaxable costs must be made by
>      motion under Rule 54(d)(2), subject to the provisions of this
>      subdivision, at a time set by the court.  Notice of the motion
>      must be served on all parties and, for motions by class counsel,
>      directed to class members in a reasonable manner.
>
>      (2)     *Objections to Motion*.  A class member, or a party from
>      whom payment is sought, may object to the motion.

Fed.R.Civ.P. 23(h)(1) and (2) (emphasis added).

      Class members' due process right to be heard at the fairness hearing is

violated under the terms of the Notice as class members are required to file their

objection to Class Counsel's fee request <u>before</u> Class Counsel's motion for attorneys' fees is filed with the Court.

> The parties shall, by May 23, 2008, file and serve all papers in support of the application ... for payment of attorney's fees and reimbursement of expenses.

Hearing Order, filed 12/4/07 (Dkt. 109), at 10.

Therefore, class members have been denied an adequate opportunity to oppose Class Counsel's fee request.

> Subject to Rule 23(h), the court must, on a party's request [for attorneys' fees], give an opportunity for adversary submissions on the motion....

Fed.R.Civ.P. 54(d)(2)(C).

> In setting the date objections are due, the court should provide sufficient time <u>after the full fee motion is on file</u> to enable potential objectors to examine the motion.

Report of the Judicial Conference of the United States on Class Action Settlements (Feb. 2006), Proposed Amendments to Fed.R.Civ.P. 23, "Class Actions," Committee Note, Subdivision (h), ¶ 2 (emphasis added).

This is exactly the situation criticized by Keith L. Johnson, former Chief Legal Counsel for the State of Wisconsin Investment Board:

> In most cases, settlement notices call for class members to state their objections to fee awards by a deadline that is set to pass before class counsel even files the fee petition.  Thus, class members must decide whether to object to something they haven't seen!  This appears to be a patent violation of the due process rights of class members....  Since courts do not seem to recognize this problem, class members will have to raise the issue repeatedly until this practice changes.

Keith L. Johnson, former Chief Legal Counsel for the State of Wisconsin Investment Board, *Lesson 5: Settlements are Often Structured So the Class Has to Object to Fee Petitions before They Are Even Filed* (Foley & Lardner, Chicago, Ill., bulletin).

In order to cure this defective notice, Class Member requests that the Court appoint a class guardian[1] to represent the class members' interests before the special master.

2.      Class member objects to the limitation of settlement benefits to a subclass of class members who are "Benefits-Eligible Settlement Class Members" (*see* Settlement Agreement § III.C.1).  The subclass of Benefits-Eligible Settlement Class Members includes class members who are no more entitled to a benefit for releasing their claims than the remainder of the class.  Class Member believes that this Court must make further inquiry to determine the propriety of this discrimination within the settlement class.

(a)      Class members like Objector who were not "offended and upset" have been denied adequate representation in the process of the allocation of settlement benefits.

3.      Class Member objects to the separate payment of attorneys' fees by the Defendants to Class Counsel:

> The amount of fees and expenses awarded to Plaintiffs' Counsel by the Court are separate and apart from any money and/or benefits made available to the Class or the Class

---

[1]  An additional reason for this appointment is the misleading language in the Notice, which reads:

> If you want to be represented by your own lawyer, you may hire one at your own expense.

*See* Notice at 6, ¶ 11, which deceptively ignores the power of the Court to award reasonable attorneys' fees to Objector's counsel.

---

Representatives, and will not affect in any way the settlement
benefits to which you are entitled.

(Notice at 6, ¶ 12),

if, under the Settlement Agreement, should the Court award a reasonable attorneys'
fee of less than $955,000, the reduction will solely benefit the Defendants.

Objector requests that both the class's recovery and the maximum fee
agreed to be paid by Defendants be treated as one class recovery so that, in the
event the maximum fee is not paid, the class can share with the Defendants in the
event of any fee reduction.

(a)    Class Counsel are inadequate representatives of the class
under the separate attorneys' fee payment settlement structure.

(i)    Class Counsel are not adequate representatives of
the class as long as the class recovery and the separate payment of attorneys' fee
conflict exists.

In a class action, adequate representation is a due
process requirement and class counsel must represent the interests of absent class
members <u>at all times</u> of the negotiations with the Defendants.  (*See Phillips
Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Matsushita Ele. Indus. Co.,
Ltd. v. Epstein*, 116 S.Ct. 874, 885 (1996)).

An adequate representative must...be <u>free from
economic interests that are antagonistic</u> to the
interests of the class.

*Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990) (emphasis added).

The class's financial interests have been sacrificed by Class
Counsel's structuring of the settlement so that the separate payment of fees is
negotiated <u>after</u> the class' recovery.

A lawyer's obligation is to maximize his or her client's recovery. The separate fee payment maximizes the attorneys' fee at the expense of the class recovery.

> When counsel for the [plaintiff] class [negotiates their fees after the class's recovery], there is inherent conflict of interest. The defendant, and therefore its counsel, is <u>uninterested in what portion of the total payment will go to the class</u> and what percentage will go to the class attorneys; accordingly, the defense operates as no brake against the invidious effects of such a conflict of interest.

*Piambino v. Bailey*, 757 F.2d 1112, 1143 (1985) (emphasis added).

Plaintiffs' and Defendants' counsel are perfectly capable of understanding at the outset that the total cost of the settlement to the Defendants is the sum of the attorneys' fee plus the class's recovery. Both sides understand the obvious fact that giving the class less means there is more cash available to offer to Plaintiffs' counsel for their fees. Therefore, Plaintiffs' counsel have a financial incentive not to drive the hardest bargain they can with regard to the class's recovery during the first step of the negotiation.

Rule 23(a)(4) does not permit an attorney to represent a class if he suffers from a conflict of interest. It does not matter that Class Counsel may have negotiated a reasonable settlement. Rule 23(a)(4) regarding adequacy of representation is concerned with procedural safeguards. It is the fact that Class Counsel have created a settlement structure that may further their own interests rather than the interests of the class, which makes the representation inadequate. Class Counsel are not protecting the financial interests of the class when they negotiate a separate fee payment before judicial approval of the class's recovery.

> A divergent financial interest is a paradigmatic conflict of interest . . . .

*In re Asbestos Litig.,* 90 F.3d 963, 1010 (5th Cir. 1996).

    (b)    The two payments must be merged into one common fund.

    A simple way to rectify Class Counsel's breach of fiduciary duty to their clients would be to merge both payments by the Defendants into one fund for the class, as suggested in the MANUAL FOR COMPLEX LITIGATION.  Absent such a change, Class Counsel have violated their responsibility under Fed.R.Civ.P. 23(a)(4) -- failure to provide adequate representation to the class.

> If an agreement is reached on the amount a settlement fund and separately providing an amount for attorneys' fees...the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class...
>
> (MANUAL FOR COMPLEX LITIGATION 3D, *Class Actions, Settlements,* "Role of the Court," 30.42 (Fed. Judicial Center, 1995), at 240 (emphasis added)).

For example, see *Cisek v. National Surface Cleaning, Inc., et al.*, 954 F. Supp. 110 (S.D.N.Y 1997) (emphasis added):

> The defendants and plaintiffs' counsel agreed on the record that any amount by which the fees and costs defendants agreed to pay plaintiffs' counsel exceeds the sum awarded by the court will be paid to the plaintiffs themselves.

*See also* Alan B. Morrison and Brian Wolfman, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U.  L. REV. 439 (April/May 1996), at 504-05 (emphasis added):

> For all these reasons, class action Rules should treat direct payments of fees from the defendant to the

---

> plaintiffs' lawyers <u>as payments into the common fund</u>.  In addition, if the defendant does not oppose a fee below a certain amount, any fee award "saved" by a successful challenge to the award, or a *sua sponte* court reduction, should go to the class and not the defendant.

4. The final fee award must be linked to actual class member receipt of settlement benefits.

Class Member objects to any final award of attorneys' fees that does not consider the number of class members who actually receive settlement benefits in calculating a final attorneys' fee award.

> The relevant inquiry...focuses a court's attention on the benefits <u>actually received</u> and used by plaintiffs, [and] will determine not only the often evident threshold question of eligibility for fees, but it will also be critical in determining the amount of a reasonable fee award, in that the final award must depend on a full assessment of the extent of the benefits received by plaintiffs.

*In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283 n.116 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (emphasis added).

> One fundamental focus is <u>the result actually achieved</u> for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members....
>
> In many instances, the court may need to proceed with care in assessing the value conferred on class members.  Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members.  In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure.  In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.

---

Report of the Civil Rules Advisory Committee, *Rule 23 Class Actions*, "Rule 23(h):  Attorney Fees Award," Committee Note,  at 293 (September 2002) (emphasis added).

Class Member requests that no final determination of an amount of attorneys' fees be awarded in this case until it is determined:

      (a)     The number of people who file a claim for a replacement disc.

      (b)     The number of people who receive a cash payment of 75% of the purchase price of their disc.

      (c)     The number of people who receive a $35 benefit.

      (d)     The number of people who receive a $10 benefit.

      (e)     The number of people who receive a $5 benefit.

Numerous courts, both state and federal, academic commentators, and the United States Congress have endorsed this approach in awarding reasonable attorneys' fees in class actions.  *See* attached Addendum A.

5.     Class Member objects to Court approval of the proposed settlement unless the information referred to in (a), (b), (c), (d), and (e) in Objection No. 4 above is filed with the Court.  (Currently, Claim Forms are due May 16, 2008.) Class Member requests that the required filing of the aforementioned information be a condition of approving the settlement because it is necessary to protect the interests of the class and ensure the proper functioning of the class action mechanism.

The findings of the RAND Institute for Civil Justice in *Class Action Dilemmas, Executive Summary* 24 (1999), reflect the importance of providing data on class member settlement participation:

> [J]udges should require ...  reports on the process of claims administration — including <u>the number of claims accepted</u> and denied, reasons for denial....  These regular reports on claims administration should be available to the public for review.

*Id.* at 490; emphasis added.

The Federal Trade Commission supports the inclusion of this type of information as part of the settlement approval process:

> Finally, in the event the Court approves ... any settlement with a coupon component, we urge the Court to require that counsel for the parties submit <u>detailed information about the number and percentage of coupons redeemed</u>, the rate of redemption, and the number of coupons transferred during the life of the coupons.  This data, which is of great interest to courts, legislators, various governmental enforcement agencies, legal scholars, and the community at large, will assist all in assessing the efficacy of nonpecuniary coupon settlements.  Tracking actual redemption experience, of course, would be critical to implementing this approach to fee approval as well.

*Haese v. H&R Block, Inc., et al.*, No. CV-96-423 (Dist. Ct., Kleberg Cty., Tex., 105th Jud. Dist.) (Federal Trade Commission's Mem. P&A's as Amicus Curiae re the Proposed Class Action Coupon Settlement and Pet. for an Award of Attorneys' Fees, dated 6/4/03, at 31) (emphasis added).

The need for data was echoed at the hearings with regard to Rule 23 reform:

> "What is stunning about the way we proceed in rule revision, less so today than in my day, is that we do it with a tremendous absence of empiric data."

John Frank, Ass't Reporter to Benjamin Kaplan, Hr'g Tr. 11/22/96, re Proposed Amendments to the Federal Rules of Civil Procedure, Rule 23 (E.D. Pa., Philadelphia, Hon. Paul V. Niemeyer, Chairman), at 66:4-8.  *Also, see* Addendum B.

---

6.      Class Member objects to the requirement that he publicly disclose his address and telephone number.  This confidential information can be obtained from the Objector's counsel.  No explanation is provided for a requirement that class members who oppose the settlement and/or fee request publicly disclose personal information.

7.      Class Member objects to approval of the proposed settlement unless Class Counsel file with the Court an expert's opinion regarding whether class members have sustained a legally cognizable injury, and the amount of monetary damages suffered by the class as a result of the "injury" suffered by Defendants' alleged misconduct.  In *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002), at 285, Judge Posner, in referring to the approval of class action settlements, instructed the district court on remand as follows:

> [I]nsist[] that the parties present evidence that would enable four possible outcomes to be estimated [by the class and the court]:  call them high, medium, low, and zero.  [This] approximate range of percentages, reflecting the probability of obtaining each of these outcomes in a trial ... and so a ballpark valuation [can be] derived.

*Accord, Synfuel*, 463 F.3d at 653:

> In conducting this analysis [of the fairness, adequacy, and reasonableness of the settlement], the district court should begin by "quantify[ing] the net expected value of continued litigation to the class." *Reynolds*, 288 F.3d at 284-85.  To do so, the court should "estimat[e] the range of possible outcomes and ascrib[e] a probability to each point on the range." *Id.* at 285.  Although we have recognized that "[a] high degree of precision cannot be expected in valuing a litigation," the court should nevertheless "insist[] that the parties present evidence that would enable[] possible outcomes to be estimated," so that the court can at least come up with a "ballpark valuation." *Id.* at 285.

---

This need for additional information is confirmed in a recent Federal Judicial

Center publication:

> [Y]ou cannot rely on adversaries to shape the issues that you
> must resolve in the class context.
>
> ....
>
> <u>[I]t seems absolutely necessary to obtain information and
> arguments from the parties about their assessment of the
> probabilities of success and their projection of a realistic range
> of possible recoveries.</u>  *Reynolds*, 288 F.3d at 284-85, discusses
> this approach further.  While party submissions may influence
> your judgment about the merits, keep in mind that the parties
> have their own interests in supporting the settlement.  You may
> need to look elsewhere for information that will allow you to
> take an independent and hard look at the merits of the claims
> and defenses.

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation:  A
Pocket Guide for Judges* (Fed. Jud. Center 2005), at 2 and 9 (emphasis added).

    8.    Class Member objects to a fee award by the Court that considers

Defendants' charitable contribution as a factor supporting a fee to Class Counsel.

> [T]he value of coupons distributed [to charitable or
> governmental organizations] ... shall not be used to calculate the
> class attorney's fee award.

Greenberg Traurig, ALERT, *New Federal Legislation:  The Class Action Fairness
Act of 2005,* at 1 (Mar. 2005).  *See also* Theodore H. Frank, *Cy Pres Settlements*,
CLASS ACTION WATCH, at 1 (The Federalist Society, March 2008).

    (a)    Class Member objects to the payment of any of the class's

recovery to a third party because the overwhelming majority of the class is

receiving nothing from the settlement.

(b)     Class Member objects to the payment of any of the class recovery to a third-party entity as no notice to the class has been provided by the settling parties of the entity who is to receive this money.

> Defendants shall pay the difference between the collective value of claims filed on or before the Claims Deadline and One Million Twenty Five Thousand Dollars ($1,025,000) to a charitable entity or entities to be agreed upon by the parties and subject to court approval once the value of the charitable contribution has been determined.

Settlement Agreement, filed 11/19/07 (Dkt. 106-2), at 15.

9.     Class Member objects to court approval of Class Counsel's fee request for the additional reason that Class Counsel has failed to disclose the terms of their fee-sharing agreement.  Although eight law firms are seeking attorneys' fees in this case, there is no information on the nature of the fee-sharing agreement among these firms and no information of the necessity of this number of law firms to prosecute this case.

> We reject this authority, however, to the extent it allows counsel to divided the award among themselves in *any* manner they deem satisfactory under a private agreement.

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir.), *cert. denied*, 484 U.S. 926 (1987).

> *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1452, 1458-62 (E.D.N.Y. 1985) (Chief Judge Weinstein ... ordered that "[i]n future cases, *as soon as a fee-sharing arrangement is made its existence must be made known to the court,* and through the court to the class."  *Id.* at 1463.)

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 156-57 (2d Cir. Apr. 21, 1987).

Such a division overlooks the district court's role as protector of a class's interests under F.R.C.P. 23(e) and its role of assuring reasonableness in the awarding of fees in equitable fund cases.

> Rule 23(e)(2) directs the parties to "file a statement made in connection with the proposed settlement."  Let the settling parties know that you expect them to provide the full settlement agreement as well as an informative summary of other agreements, ... side understandings about attorney fees; and agreements about filing future cases, ... and the like.

Barbara J. Rothstein and Thomas Willging, *Managing Class Action Litigation, supra*, at 9 (emphasis added).

> The court [in *Agent Orange*] rejected authority that "allows counsel to divide the award among themselves in *any* manner they deem satisfactory under a private fee sharing agreement.  Such a division overlooks the district court's role as protector of class interests ... and its role of assuring reasonableness in the award of fees in equitable fund cases."

*In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 473 (9th Cir. 1997).

10.    Class Member objects to seven plaintiffs receiving cash incentive payments for representing the class when the settlement denies any benefits to the overwhelming majority of class members.

(a)    Before considering such payments, Class Member requests that the Court determine whether any of these class members were solicited by Class Counsel to participate in this litigation.

> The problems are compounded in class action cases in which the real parties in interest are the lawyers.  In some cases, class members' injuries are *de minimis,* but the costs of trial are sufficient to lead to settlements that provide generous counsel fees for plaintiffs' attorneys and little or no compensation for

> clients.  Defendants find such settlements particularly inviting if the remedy can be structured so that most plaintiffs will not claim the damages to which they are theoretically entitled.

Deborah L. Rhode, *Frivolous Litigation and Civil Justice Reform:  Miscasting the Problem, Recasting the Solution*, 54 DUKE L. J. 447, 465 (2004).

     (b)    In addition, Class Member requests that prior to approval of the settlement, the Court determine whether the claims of the Representative Plaintiffs are typical of the claims of the settlement class.

    11.    Class Member objects to any fee calculation based on the costs to Defendants of the Exchange Program (Section III.B.6) because:

     (a)    Class Members receive no benefit from the replacement of game discs; and

     (b)    Defendants already have an Exchange Program available to class members without the intervention of the class attorneys.

    12.    Objector reserves the right to adopt objections filed by other class member/objectors.

    Dated:  April 25, 2008

                      Respectfully submitted,

                      /s/Lawrence W. Schonbrun

                      _____

                      Lawrence W. Schonbrun
                      Attorney for Plaintiff Class
                      Member/Objector Theodore H. Frank

<u>PROOF OF SERVICE</u>

I declare that:

I am employed in the County of Alameda, California.  I am over the age of 18 years and not party to the within action; my residence address is 44 Emery Bay Drive, Emeryville, California 94608.

On April 25, 2008, I served the attached:

OBJECTION AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING ON PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES

 X   By mail on the below-named parties in said action, by placing a true and accurate copy thereof in a sealed envelope, with postage thereon fully prepaid, and depositing the same in the United States Mail in Alameda County, California, to the addresses set forth below:

Seth R. Lesser, Esq.                      Jeffrey S. Jacobson, Esq.
Locks Law Firm PLLC                    Debevoise & Plimpton LLP
110 East 55th Street                       919 Third Avenue
New York, NY 10022                      New York, NY 10022

Clerk of the Court
United States District Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312
(original)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2008.

/s/Sandra Norris
_____
Sandra Norris

# ADDENDUM A

(a)      By conditioning the award of attorney's fees upon the claims
         actually submitted, the Court of Chancery exercised its
         discretion equitably, to correlate the attorneys' compensation
         with the structure of the settlement benefits the attorney had
         negotiated for the class.

*Goodrich v. E.F. Hutton Group, Inc.* (Del. Supr.), 681 A.2d 1039 (1996), at 1049)
(emphasis added).

> Staging the fee award in this manner will ... help ensure that the
> fee award is proportionate to the actual value created for the
> class ... [and] will emphasize the principle that in class actions
> the interests of counsel who negotiate settlements should align
> with the interests of the class.

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass.
1997) (emphasis added).

> [O]ne should nevertheless ask whether a rule of law that would
> hold that there is an entitlement, on the part of class counsel, to
> a legal fee fixed in relation to a maximum available fund rather
> than benefits actually realized by class members, would be a
> desirable general rule....  In my opinion, the answer is certainly
> no.

*Wise v. Popoff*, 835 F. Supp. 977, 981 (E.D. Mich. 1993) (emphasis added).

> [The language in the PSLRA] is intended to prevent the
> payment of attorney's fees based on an inflated settlement
> figure, where a large part of the settlement is later returned to
> the coffers of the settling defendant because of a low number of
> claims.  Before awarding fees, therefore, the Court must
> determine what portion of the settlement fund will actually be
> paid to plaintiffs.

*Lyons v. Scitex Corp.*, 987 F. Supp. 271, 279 (S.D.N.Y. 1997) (emphasis added).

> I am not confident of the redemption rate that has been
> projected and thus of the settlement's total value.  Therefore I
> have determined to delay [the] award of attorney fees until
> experience shows <u>how many vouchers are exercised</u> and thus
> how valuable the settlement really is.

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F.Supp.2d 184,
190 (D. Me. 2003) (emphasis added).

> This Court is concerned, however, about the possibility that the
> actual value of the settlement may fall significantly short of the
> estimated value, thus drastically altering the proportionality of
> the <u>fee award to the benefit actually conferred to class</u>
> <u>members</u>.

*Bussie v. Allmerica Financial Corp., et al.*, No. 97-40204-NMG (D. Mass. May 19,
1999), 1999 U.S. Dist. LEXIS 7793, *7 (emphasis added).

> [T]o approve the fee requested provisionally, permit its partial
> payment immediately, but reserve the balance for payment
> either in full or after any appropriate adjustment in the light of
> <u>actual experience under the settlement</u>.  (emphasis added).

*Id.* at *9, *citing Hancock Fee Decision*, 989 F. Supp. at 379.

> "The court is of the view that of substantial significance is the
> value of the benefit <u>actually received</u> by those on whose behalf
> the action was allegedly instituted.
> ....
> "The key element in assessing the reasonableness of an
> attorney's fee and any adjustment made in the amount requested
> is 'the relationship between the amount of the fee awarded and
> the results obtained.'"

*Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 31 (D. Conn. 1997)
(citations omitted; emphasis added).

> Thus at this point the extent of the benefit to the class cannot be
> determined with any degree of exactitude.  It may be that so few

> will receive payment (with the unused portion of the settlement
> fund going back to Greyhound) that the benefits to the class
> will be "miniscule"....
>
> ....
>
> Under the circumstances, the fee determination will be reserved
> until all claims of shareholders entitled to participate in the
> settlement have been filed and determined.

*Voege v. Ackerman*, 67 F.R.D. 432 (S.D.N.Y. 1975), at 436 (footnotes omitted) and 437.  *See also Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio), *aff'd,* 102 F.3d 777 (6th Cir. 1996) (holding back large portion of fee award until additional "future" benefits to class were actually paid into class fund).

In *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1294 (11th Cir. 1999), *cert. denied,* 530 U.S. 1223 (2000), United States Supreme Court Justice Sandra Day O'Connor had the following remarks about the importance of actual utilization of class member benefits in setting reasonable attorneys' fees.

> In *Boeing v. Van Gemert*, 444 U.S. 472 (1980)....  We had no
> occasion . . . however, to address whether there must be at least
> *some* rational connection between the fee award and the amount
> of the actual distribution to the class.  The approval of
> attorney's fees absent any such inquiry could have several
> troubling consequences.  Arrangements such as that at issue
> here decouple class counsel's financial incentives from those of
> the class, increasing the risk that the actual distribution will be
> misallocated between attorney's fees and the plaintiffs'
> recovery.  They potentially undermine the underlying purposes
> of class actions by providing defendants with a powerful means
> to enticing class counsel to settle lawsuits in a manner
> detrimental to the class....  Although I believe this issue
> warrants the Court's attention, this particular case does not
> present a suitable opportunity for its resolution.

*Id.*, 530 U.S. at 1224-25 (emphasis added).

(b)    Numerous academic commentators on the class action mechanism support the use of evidence of actual utilization of class member benefits as a factor in setting reasonable attorneys' fees in class actions.

Professor Janet Cooper Alexander recommends:

> *Tie the lawyers' compensation directly to the interests of the class*.
> The application, briefing and hearing on the fee request should not take place until after all claims are filed, and the judge should be required to take into account the actual benefit conferred on the class (as demonstrated by the claims made)....

Janet Cooper Alexander, *Contingent Fees in Class Actions*, 47 DEPAUL L. REV. 347, 360 (emphasis added).

Professor Judith Resnick notes:

> The innovation of the securities fee statute is to limit judicial discretion by requiring that fees are a percentage of monies actually *received* by class members, as contrasted to a percentage of a fund established.

Judith Resnick, *Money Matters:  Judicial Market Interventions Creating Subsidies and Awarding Fees and Costs in Individual and Aggregate Litigation*, 148 UNIV. PA. L. REV. 2119, 2122-23 n.6 (2000) (underline added; italics in original).

The RAND Institute for Civil Justice notes:

> To avoid rewarding class action attorneys for dubious accomplishments, judges should award fees [based upon the benefits] *actually disbursed* to class members or other beneficiaries of the litigation."
> ....
> An added benefit of linking class action attorneys' fees to disbursements is that it would give the attorneys an interest in ensuring expeditious and effective delivery of compensation to class members.

RAND Institute for Civil Justice, "Achieving the Objectives of Rule 23(b)(3) Class Actions," at 491.

Professor John C. Coffee, Jr., in his article *Claims Made Settlement: An Ethical Critique*, NEW YORK LAW JOURNAL (July 15, 1993), "Corporate Securities," notes:

> [L]awyers are fiduciaries to the class they serve, and when the fiduciary is economically indifferent to the class's success, a "moral hazard" problem arises.
> ....
> Escrow procedures could be utilized to ensure that the attorney's return would rise and fall with the class members' recovery in order to keep their interests reasonably aligned.

*Id.* at 5 (emphasis added).

Professors Geoffrey P. Miller and Lori Singer note, in their article *Nonpecuniary Class Settlements*, 60 LAW AND CONTEMP. PROBS. 97, Duke Univ. Sch. of Law (Nos. 3 & 4, Summer & Autumn 1997):

> As a final complication, the plaintiffs' attorneys may use the valuation potential of the settlement to shop for high fees among the different jurisdictions that can hear the case....
> Again, this fee will come at expense of the class's optimal recovery because the attorneys' fee should be predicated on the actual value of the fund the class receives.

*Id.* at 112 (footnotes omitted).

The importance of proper incentives to class counsel was noted in the Law Review article *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805 (1997):

> The attorneys' [fee] recovery should be tied to [the recovery] of the class; to the extent the attorneys hope to prosper in the representation, that reward should be a direct product of what they return to the class.
> ....

> [I]t impedes sweetheart deals by ensuring that attorneys' [fee] recoveries are directly tied to the <u>actual return to the class</u>....

*Id.* at 829 and 830 (emphasis added).

> *See* Fed.R.Civ.P. 23(h) advisory committee's note; *Strong v. Bellsouth Telecomms., Inc.*, 137 F.3d 844, 853 (5th Cir. 1998) (holding the trial court did not abuse its discretion in considering the actual results of the settlement).  The federal Class Action Fairness Act of 2005 addresses this issue directly by tying the attorney fee award to "redeemed" coupons. Pub.L.No. 109-002, 119 Stat. 4 (2005).

Michael Northrup, *Restrictions on Class Action Attorney Fee Awards*, 46 S. Tex. L. Rev. 953 (Summer 1005), at n.83.

(c)     The noted federal jurist, the Honorable John F. Grady, in his article *Reasonable Fees:  A Suggested Value-Based Analysis for Judges*, 184 F.R.D. 131 (1999), states:

> Is the recovery something the client is going to use?  A benefit obtained for a client that is unused by the client does not justify a substantial fee.

(d)     Congress has demonstrated an a commitment to this principle in the wording of Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §§ 77z-1(a)-(3)(B)(v)).

> Total attorneys' fees and expenses awarded by the court to attorneys for the plaintiff class [shall be based upon] the amount of any damages and prejudgment interest <u>actually paid to the class</u>.

*Id.* at § 77z-1(a)(6) (emphasis added).

See also Class Action Fairness Act of 2003.

## ADDENDUM B

This request for a final accounting has been <u>successfully</u> raised and adopted in several recent class action settlements.

(a) The Honorable Ronald M. Sabraw of the Alameda County Superior Court ordered a reporting requirement in the *Prestemon v. Echostar Communications Corp., et al.*, No. 2002-053014 (Super. Ct., Alameda Cty., Cal.), class action. Judge Sabraw, in his Order dated September 3, 2004, ruled:

> The Court having read and considered the pleadings and having heard the arguments of all counsel HEREBY ORDERS AS FOLLOWS:
>
> 1. Objectors request for an accounting of benefits conferred upon the class is GRANTED. The Echostar Defendants are hereby ordered to render to the Court and (sic) accounting of all benefits conferred upon the class pursuant to the terms of the settlement approved by the Court. Specifically, Echostar must provide an accounting as follows:
> a. The number of Claim Forms submitted by class members;
> b. The number and the type of PPV Certificates redeemed by class members, for both Current Customers and Former Customers;
> c. The total number of Echostar customer accounts that received a credit, whether against Subscription Fees or other charges, in whatever amount toward their accounts and the total amount of all such credits applied by Echostar on behalf of the class as a whole;
> d. The number of Equipment Certificates issued and redeemed. (Echostar need only account for redemption of Equipment Certificates if they are returned by the retailer to Echostar following purchase of equipment.)

(b)     The Honorable Carolyn B. Kuhl of the Los Angeles County Superior Court ordered such a reporting request in the *Hotel Energy Surcharge Cases*, JCCP No. 4185 (Super. Ct., Los Angeles Cty., Cal.):

> Mr. Schonbrun:  I would like to make two points,
> if could.  The first has to do with my request that the Court require the parties as a part of approving these settlements that the number of class members who actually take advantage of these coupons be filed with the Court.
> ....
> The reason I make this request is a public policy reason, and it's because, as I stated in my papers, specific data on who actually takes advantage of these coupons is missing from the equation in the debate about class actions.
> (Hr'g Tr. at 2:28-3:1-11)

> The Court:   With regard to the number of
> coupons used....  It ... tells us what cash value the class members made of the case, and that could be compared to, for example, ... the fees paid in the case.  And I think it is a useful exercise.
> (Hr'g Tr. at 33:20-28; 34:1-2; emphasis added).

Coordination Proceeding Special Title (Rule 1550 (b)), No. JCCP 4185, Hr'g Tr. 10/20/02.

> [Defendant] is hereby ordered to file a document reporting, to the best its knowledge, the total number of Certificates that were redeemed at [defendant's] hotels before the conclusion of the Certificate Redemption....  This document shall be filed with this Court on or before March 15, 2004.

*Id.*, Second Amended Order of Final Judgment, ¶ 19, at 9, filed 11/12/02.

(c)     The Honorable Jack Komar of the Santa Clara County Superior Court ordered such a reporting requirement in *In re WebTV Networks Litig.*, Master

File No. CV793511 (settlement fairness hearing of April 23, 2003).  Judge Komar ordered the parties to the settlement to report back on August 29, 2003, to advise the court on the number of coupons requested by class members and the amount of cash paid out to class members.

> The parties are directed to file a report with the Court by August 29, 2003, describing the status of the settlement distribution and claims submitted and processed.

(d)     The Honorable Carl W. Holm of the San Mateo Superior Court, while not adopting objector's specific language, nonetheless ordered a reporting requirement in the *Nuanes v. Insignia Financial Group, Inc., et al.*, No. 404228 (Super. Ct., San Mateo Cty., Cal.) class action.  Judge Holm ordered that "the person most knowledgeable about claims administration is ordered to prepare and file a final accounting with regard to disposition of the settlement fund."

(e)     *See also In re California Indirect-Purchaser X-Ray Film Antitrust Litig.*, No. 960886 (Super. Ct., San Francisco Cty., Cal.), before the Hon. A. James Robertson, class counsel filed a multipage spread sheet, listing the amount of the payments received by each class member from the settlement fund.

ADDENDUM C

> While the conflict between a class and its attorneys may be most stark where a common fund is created and the fee award comes out of, <u>and thus directly reduces, the class recovery</u> [the negotiation of the attorneys' fee by the parties subsequent to the class negotiation will reduce the amount of the money which the defendants intend to make available to the class], there is also a conflict inherent in cases like this one, where fees are paid by an adversary from its own funds -- the danger being that the lawyers might urge a class settlement at a low figure or on a-less-than optimal basis in exchange for red carpet treatment on fees....   It is because of the *potential* risk that plaintiffs' attorneys and defendants will team up to further *parochial interests* at the expense of the class that the Rule 23(e) protocol employed by several circuits explicitly includes *scrutinizing settlements for indicia of collusion....*

*In re Chambers Development Sec. Litig.*, 912 F. Supp. 852 (W.D. Pa. 1995), at 865 (emphasis added).

> The plaintiffs' attorneys negotiating the settlement, on the other hand, were subject to an <u>obvious conflict of interest</u> with the class in making the allocation.

*Shlensky v. Dorsey*, 574 F.2d 131, 150 (1978) (emphasis added).

Class Counsel have abandoned their clients in order to pursue a settlement structure in which they would be representing their own interests at a separate fee negotiation when they should be representing their clients at all times.

> When counsel for the [plaintiff] class [negotiates their fees after the class's recovery], there is inherent conflict of interest.  The defendant, and therefore its counsel, is <u>uninterested in what portion of the total payment will go to the class</u> and what percentage will go to the class attorneys; accordingly, the defense operates as no brake against the invidious effects of such a conflict of interest.

*Piambino v. Bailey*, 757 F.2d 1112, 1143 (1985) (emphasis added).

The Court must recognize that regardless of how well-intentioned Plaintiffs' counsel may claim to be, this "collusive" structure benefits Class Counsel at the expense of the class.

The following representation to the Court by defense counsel Charles Schwartz in the *Horizon Healthcare Corp. Litigation* sums up the impropriety of Class Counsel's conduct:

> Your Honor, I have, from the very beginning of this litigation, ...never engaged in any discussions with the counsel regarding payment of attorneys' fees from my perspective. <u>I think that's inappropriate for a defendant's representative to negotiate over [the amount of class counsel's fee]</u>....
>
> That [the subject of attorneys' fees], respectfully, Your Honor, is a responsibility of the Court under Rule 23(e), and is a matter between the class and its counsel. And, therefore, it is the appropriate position for the defendants and the defendants' counsel not to be involved in questions of agreement of amount of attorneys' fees and the like.... In fact, that's one of the reasons that some objectors object to settlements, because the defendant was involved in the question of attorneys' fees.
>
> <u>So I have not negotiated over the amount of attorneys' fees</u>....

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*, No. 96-0442-BB/LCS (D.N.M.), Transcript of Fairness Hearing Proceedings, 9/12/97, at 103 (emphasis added).

The enforcement of an attorney's fiduciary responsibilities are of the utmost importance:

> As Judge Frankfurter observed, "From a profession charged with such responsibilities, there must exacted...<u>the strictest observance of fiduciary responsibility</u>...."

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 247 (1957) (concurring opinion) (emphasis added).

> A lawyer is a fiduciary of his client and...is presumptively <u>barred from self-dealing</u> at the expense of the person to whom he stands in a fiduciary relationship.
>
> (*Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th Cir. 1991) (emphasis added)),

and particularly in the class action context:

> [A]ttorneys...seeking to represent the class assume <u>fiduciary responsibilities</u> to the class...."

N<small>EWBERG ON</small> C<small>LASS</small> A<small>CTIONS</small> (3d ed.), Ch. 15, § 1503, *Relationship Between Class Representative or Counsel and Absent Class Members* (emphasis added).

Numerous courts agree:

> <u>These two amounts together constituted one recovery</u> fund from the viewpoint of the defendant who could have little interest in its allocation between the attorneys and their clients.

*Shlensky v. Dorsey*, *supra*, 574 F.2d 131at 150 (emphasis added).

> Any proposed settlement should be presented in terms of the <u>gross consideration to the Fund</u> or class and the matter of attorneys' fees left for judicial determination and award.

*Norman v. McKee*, 290 F. Supp. 29, 36 (1968) (emphasis added).

> <u>All amounts to be paid by the defendants</u> are properly part of the settlement funds....

*In re General Motors Engine Interchange Litig.*, 594 F.2d 1106 (1979), at 1130 (emphasis added).

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                             :

In re GRAND THEFT AUTO VIDEO GAME  :
CONSUMER LITIGATION (No. II)      : No. 1:06-md-1739 (SWK) (MHD)
                             :

------------------------------------------------------------:
                             :

This Document relates to:         :
               All Actions     :
                             :

-------------------------------------------------------------x

## DECLARATION OF CLASS MEMBERSHIP OF THEODORE H. FRANK

Lawrence W. Schonbrun, Esq.
Law Offices of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA 94705
Tel:  (510) 547-8070
Fax:  (510) 923-0627

Attorney for Plaintiff Class Member
Theodore H. Frank

My name is Theodore H. Frank.

1.      I purchased a *Grand Theft Auto: San Andreas* First Edition Disc between June 6, 2005, and June 29, 2005.  My best recollection is that I purchased the game on the first day of release for the X-Box, which was on or about June 6, 2005, at either a Best Buy or GameStop.  I have a saved *Grand Theft Auto: San Andreas* game on my X-Box hard drive with a time stamp of June 29, 2005.

2.      Not only did I purchase the game before July 20, 2005, but the serial number on the X-Box CD I purchased contains the sequence "tt13002a," which is consistent with the First Edition for the X-Box before Rockstar recalled the game.

3.      As a result of this purchase, I understand I am a member of a class defined as "all natural persons or entities in the United States who purchased a *Grand Theft Auto: San Andreas* First Edition Disc between August 2004 and December 4, 2007."

4.      I have retained Lawrence W. Schonbrun as additional counsel to represent my interests in the further proceedings in this action.

5.      I authorize Mr. Schonbrun to take all steps which he deems necessary to protect and promote my interests in this litigation, including but not limited to filing an objection on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Washington, District of Columbia, on this 18th day of March, 2008.

*Theodore H Frank*
_____
Theodore H. Frank